IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **UNITED STATES OF AMERICA,**  **Plaintiff/Respondent,**  v.  **JONATHAN SLOAN,**  **Defendant/Petitioner.** | Case No. 13-40025-JAR-3  20-04007-JAR |

# MEMORANDUM AND ORDER

This matter comes before the Court on Petitioner Jonathan Sloan's Motion for Relief Under 28 U.S.C. § 2255 (Doc. 230). Petitioner asks the Court to vacate his conviction and sentence because the government intentionally intruded upon his Sixth Amendment right to counsel. The government responded, opposing the motion and seeking dismissal on grounds of untimeliness.[1] For the reasons stated below, Petitioner's motion is dismissed and the Court denies a Certificate of Appealability.

## I.   Procedural History

On April 3, 2013, a grand jury returned an indictment charging Bradley Miller, Clark Sloan, and Petitioner with numerous counts related to the sale of herbal products.[2] These counts included conspiracy to commit fraud, introducing misbranded drugs into commerce, mail fraud, smuggling, conspiracy to launder money, money laundering, totaling twenty-five counts against

---

[1] Doc. 237.

[2] Doc. 1.

all three defendants in addition to forfeiture allegations. Attorneys Robin Fowler, Tricia Bath, and Thomas Bath entered appearances as counsel for Petitioner.[3]

Petitioner and Clark Sloan were tried from September 9, 2014 until September 25, 2014, when a jury convicted Petitioner on most of the charges but acquitted him on three mail fraud counts and two smuggling counts.[4] Miller, who was arrested after Petitioner's trial began, filed a petition to plead guilty to three counts pursuant to a binding plea agreement on December 22, 2014.[5] In that agreement, the parties proposed that Miller be sentenced to 87 months' imprisonment.[6]

In conjunction with his sentencing, Petitioner entered into a Post-Conviction Agreement that included, *inter alia*, a sentence appeal waiver and a collateral attack waiver (excluding claims of ineffective assistance and prosecutorial misconduct).[7] Petitioner did not appeal his conviction or sentence. Petitioner and Clark Sloan were sentenced on February 17, 2015, with Petitioner being sentenced to 96 months' imprisonment and Clark Sloan being sentenced to 87 months' imprisonment.[8] Petitioner's advisory Guideline sentencing range was 262 to 327 months' imprisonment.[9] The Court cited the post-conviction agreement as the sole basis for imposing an 87-month sentence below the advisory Guideline range.[10]

---

[3] Docs. 2–4.

[4] Doc. 146.

[5] Doc. 182.

[6] *Id.* ¶ 3.

[7] Doc. 199 at 2–3. Codefendant Clark Sloan entered into a similar agreement. *See* Doc. 198.

[8] Docs. 196, 197.

[9] Doc. 192 ¶ 195.

[10] Doc. 201 at 3–4.

On January 27, 2020, Petitioner filed a Motion to Vacate or Reduce his Sentence Pursuant to 28 U.S.C. § 2255.[11]  He also filed motions to serve subpoenas on Securus, the detention center where he resided, and the Court granted those motions.[12]  On May 18, 2021, Petitioner filed a Notice of Additional Evidence in support of his 2255 motion.[13]

In his motion, Petitioner briefly noted the facts of the *Black* case and asserted that he had been housed at CCA during 2015 and 2016, during which time the government had acquired certain audio and video recordings from the prison surveillance system.[14]  Petitioner seeks relief based on events that came to light in the *Black* case and investigation, which involved audio recordings of telephone conversations and soundless video recordings of meetings between attorneys and their clients who were detained at CCA.  The government admits that it obtained videos from CCA in connection with the *Black* case, which focused on drug and contraband trafficking inside CCA.  The government's possession of these recordings came to light in August 2016, when then-Special Assistant United States Attorney ("SAUSA") Erin Tomasic and AUSA Kim Flannigan accused defense attorney Jacquelyn Rokusek of "jeopardiz[ing] their investigation" in *Black* based on information they claimed to have gleaned from the video recordings.[15]  The defense also discovered that the  United States Attorney's Office for the

---

[11] Doc. 230.

[12] Docs. 235, 236, 238, 250, 252.

[13] Doc. 258.

[14] *United States v. Carter*, Case No. 16-20032-JAR, Doc. 758 (D. Kan. Aug. 13, 2019).  As discussed in that Order, the Sixth Amendment claims stem from recordings of conversations and meetings with counsel while they were detained at Corrections Corporation of America ("CCA").  That facility has since been renamed CoreCivic.  For convenience, the Court refers to it as CCA in this Order.

[15] *Id.* at 70–80.

District of Kansas ("USAO") had routinely obtained CCA recorded attorney-client phone calls, and that it did so without notice to the attorneys, clients, or courts.[16]

The *Black* investigation revealed in relevant part that CCA recorded some of the outgoing phone calls between detainees and their counsel using equipment provided by Securus Technologies, Inc. ("Securus").[17] The Court discussed in detail the flaws in CCA's privatization procedures and noted that as a result of these flaws, "calls between defense attorneys and clients at CCA were routinely recorded even when the attorney properly requested privatization."[18] The Court further detailed how prosecutors at the Kansas City Office of the USAO not only knew that CCA recorded such calls, but that they could obtain the resulting recordings by making "a general request for detainee calls."[19] The Court found that the government routinely made requests for detainee calls—without taking any precautionary measures to avoid protected communications—and routinely received recordings of attorney-client calls as a result.[20]

## II.     Argument and Analysis

In his § 2255 motion, Petitioner does not allege that the government intercepted any recordings of conversations or meetings between himself and his attorney. Petitioner alleges that all three defendants' attorneys had entered into a verbal joint defense agreement, although the declaration from Miller's attorney that Petitioner attached to his motion only indicates that Miller's attorney had entered into a joint defense agreement with Petitioner's attorney.[21] Further, he asserts that CCA employees recorded and burned to CD several calls codefendant Miller

---

[16] *Id.* at 29–30.

[17] *Black* Order at 5, 80, 85.

[18] *Id.* at 80–88.

[19] *Id.* at 106.

[20] *Id.* at 101–06.

[21] Doc. 230 at 1–5; Doc. 230-1, Ex. F.

made to his own attorneys days after Petitioner's trial had ended and one call codefendant Clark Sloan made to another attorney regarding potential post-conviction representation. Petitioner asserts "[o]n information and belief, the United States . . . obtained these recordings and listened to them."[22] He contends the government's interception of the recorded conversations violated his Sixth Amendment rights because the recordings were privileged, and the violation of the Sixth Amendment rights of one party to a joint defense agreement can be a violation of the rights of other parties to the same agreement.[23] Petitioner relies on evidence from the *Black* investigation to support the inference that the USAO directed CCA employees to record his codefendants' conversations, noting that requests for recordings were often undocumented and that the prosecutor in his case, Assistant United States Attorney ("AUSA") Tanya Treadway, has a demonstrated history of requesting recordings of calls placed by defendants she prosecuted.[24] As a remedy, Petitioner asks the Court to vacate his conviction and dismiss the indictment with prejudice to refiling.[25]

The government responded to Petitioner's Motion.[26] First, the government contends that Petitioner's motion is untimely because it was filed outside of the one-year limitations period of § 2255(f) and Petitioner failed to identify any facts to support applying a later limitations period start date.[27] Next, the government asserts that Petitioner neither cited nor produced sufficient facts to support his claims, including facts supporting his allegations that the government procured the recordings or even producing the calls themselves to show that the conversations

---

[22] Doc. 230 at 4.
[23] *Id.* at 6–12.
[24] *Id.* at 13–14.
[25] *Id.* at 18–19.
[26] Doc. 237-4.
[27] *Id.* at 5–7.

pertained to legal advice.[28]  Third, it argues that Petitioner, through codefendant Miller, waived any privilege or protection that could attach to these communications by making calls with the CCA system despite knowing the calls could be monitored or recorded.[29]  In addition, the government argues that Petitioner failed to demonstrate an intentional illegal intrusion into his attorney-client relationship occurred.[30]  The government also claims that any possible violation was harmless and Petitioner suffered no prejudice as a result.[31]  Finally, the government argues that Petitioner is not entitled to the relief he requested, because the relief is disproportionate to the lack of prejudice suffered.[32]

Petitioner replied, first arguing that he did not become aware of the facts underlying his Sixth Amendment claims until January 2019, less than a year before he filed the instant motion.[33]  Petitioner does not indicate whether, with the exercise of due diligence, he could have discovered the underlying facts of his claim earlier.  Petitioner also challenges the government's assertion that he did not allege sufficient facts to support his claim, relying on the circumstantial evidence raised in the initial motion.[34]  Petitioner disputes the government's claims that he or codefendant Clark Sloan waived privilege with respect to the recorded calls, noting that one party to a joint defense agreement cannot waive privilege for another.[35]  Finally, Petitioner argues that prejudice

---

[28] *Id.* at 7–9.
[29] *Id.* at 9–24.
[30] *Id.* at 27–41.
[31] *Id.* at 42–47.
[32] *Id.* at 47–51.
[33] Doc. 240 at 4–5.
[34] *Id.* at 5–6.
[35] *Id.* at 6–19.

is presumed, such that he does not have to demonstrate actual prejudice, and that it would be error not to dismiss the indictment.[36]

After conducting limited discovery, Petitioner, as noted above, submitted a Notice of Additional Evidence in support of his Petition.[37] In this notice, Petitioner asserts that CCA staff recorded and burned to CD attorney-client calls of three CCA-housed defendants in other cases prosecuted by AUSA Tanya Treadway.[38]

### A.  Statute of Limitations

Section 2255 motions are subject to a one-year statute of limitations.[39] The limitations period begins on the latest of four possible dates, only two of which are pertinent here: "(1) the date on which the judgment of conviction becomes final . . . or (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence."[40] Courts generally assume that the limitations period begins to run at the time the movant's conviction became final unless the movant can show that it should begin at a later time.[41] "If the defendant does not file an appeal, the criminal conviction becomes final upon the expiration of the time in which to take a direct criminal appeal."[42]

In this case, Petitioner filed his § 2255 motion on January 27, 2020. His motion is therefore timely under § 2254(f)(4) unless "the facts supporting" his intentional-intrusion claim

---

[36] *Id.* at 9–15.

[37] Doc. 258.

[38] *Id.* at 2–3.

[39] *See* 28 U.S.C. § 2255(f).

[40] *Id.*

[41] *See United States v. Valencia*, 472 F.3d 761, 763 (10th Cir. 2006) (determining the timeliness of a § 2255 petition beginning with he date the Petitioner's conviction became final in the absence of any demonstration that an exception or different date applies).

[42] *United States v. Prows*, 448 F.3d 1223, 1227–28 (10th Cir. 2006).

"could have been discovered through the exercise of due diligence" on or before January 27, 2019. For guidance, the Court looks to *Johnson v. United States*, where the issue before the Supreme Court was whether a state-court order that vacates a petitioner's prior state court conviction at the petitioner's request constitutes a "fact"—as opposed to a legal proposition—for purposes of § 2254(f)(4).[43] The Court addressed "the question of how to implement the statutory mandate that a petitioner act with due diligence in discovering the crucial fact of the vacatur order that he himself seeks," concluding that any due diligence is shown by prompt action by the petitioner in seeking the state vacatur order,"[44] an event within the petitioner's control. Thus, the Court held that an order vacating a petitioner's state conviction is a fact for purposes of § 2255(f)(4), but the one-year "period begins when a petitioner receives notice of the order vacating the prior conviction, provided that he has sought it with due diligence in state court."[45]

By contrast, the Court concludes that Petitioner had no such element of control over when or if the facts that form the basis of his Sixth Amendment claim occurred. Instead, he must show that "a person exercising reasonable diligence would [not] have discovered" the facts supporting his claim more than one year before that claim was filed.[46] Here, it is not apparent that Petitioner would or even could have discovered the facts needed to support his claim prior to his sentencing in 2015. Evidence of the recordings was in the government's control, and Petitioner is further removed of control of this information because the recordings were of another CCA resident, not himself. Further, "due in large part to the government's strategy of

---

[43] 544 U.S. 295, 301–02 (2005).

[44] *Id.* at 308–09.

[45] *Id.* at 298.

[46] *United States v. Denny*, 694 F.3d 1185, 1189 (10th Cir. 2012).

8

delay, denial, and deflection in the *Black* case and its handling of attorney-client recordings,"[47] it was not until at least the October 2018 evidentiary hearing in that case that evidence supporting Petitioner's claim came to light. Petitioner did not address the due diligence requirement of § 2254(f)(4) in his reply, nor does the record suggest any reason to find a later start date for limitations period. Accordingly, the limitations period for Petitioner began to run in October 2018.

Because Petitioner filed his § 2255 motion more than a year after the October 2018 hearings, his January 27, 2020 motion is not timely under § 2255(f)(4). Petitioner's motion is time-barred, and equitable tolling is not warranted.[48] His § 2255 motion is dismissed as untimely. To be thorough, however, the Court will address the merits of Petitioner's claims.

### B.     Factual Allegations

The Court agrees with the government that Petitioner cannot challenge his convictions based on the recorded calls identified in his § 2255 motion. These calls were all made after Petitioner was convicted, and it is factually impossible for any possible intrusion or constitutional violation associated with those recordings to have tainted his conviction. Petitioner's motion can only challenge his sentence.[49]

---

[47] *See United States v. Phommaseng*, No. 15-20020-JAR, 2019 WL 3801720, at *8 (D. Kan. Aug. 13, 2019) (ruling that "[t]he existence and scope of potential Sixth Amendment claims was not certain until January 2019 for [the petitioner's] audio recordings claim" because it was not until then that the government admitted to obtaining the petitioner's recorded attorney-client calls).

[48] Generally, equitable tolling is appropriate if the movant shows both "that he has been pursuing his rights diligently" and "that some extraordinary circumstance stood in his way" and prevented him from filing in a timely manner. *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). To show due diligence, the movant must "allege with specificity 'the steps he took to diligently pursue his federal claims.'" *Yang v. Archuleta*, 525 F.3d 925, 930 (10th Cir. 2008) (quoting *Miller v. Marr*, 141 F.3d 976, 978 (10th Cir.1998)). A petitioner bears the burden of demonstrating that equitable tolling is appropriate in an action. *See Miller*, 141 F.3d at 977. As with due diligence, Petitioner did not address equitable tolling in his reply.

[49] The Court has previously discussed the significance of the temporal order of events in the CCA cases and will not further belabor the point here. *See, e.g.*, *In re CCA Recordings 2255 Litig. v. United States*, No. 19-2491-JAR-JPO, 2021 WL 150989, at *18 (D. Kan. Jan. 18, 2021) (holding that, under *Tollett v. Henderson*, 411 U.S. 258,

Second, codefendant Clark Sloan's call to a potential new attorney discussing possible representation on appeal or collateral review cannot be reasonably construed to have been related to or in furtherance of the matter covered by the joint defense agreement, and, as such, cannot be protected by the joint defense privilege.[50]  This new attorney was not in a joint defense agreement with Petitioner's counsel, and this call occurred nearly a month after Clark Sloan's trial counsel withdrew.  While Clark Sloan may have had an expectation of confidentiality for his conversation, it was not covered by the joint defense agreement.

With respect to the rest of the recorded calls ("Miller calls"), Petitioner's claims are built upon precariously stacked assumptions.  First, he assumes that a CCA "employee saved and copied these recordings at the direct or indirect request of the United States."[51]  While he offers circumstantial evidence to support this claim, he asks this Court to assume that the prosecutor's conduct in one case necessarily also took place in this case.  Documentation of such requests has emerged in other cases, but not this one, and Petitioner's qualification of his claim as being grounded in either a "direct or indirect" request underscores the fragility of the assumption.[52]  Petitioner does not even assert that the government sought the Miller calls, but instead assumes it did because it could have and because it obtained recordings in other cases.

---

267 (1973), § 2255 petitioners who alleged a post-plea Sixth Amendment violation could not challenge their pleas or convictions).

[50] The joint defense privilege provides an exception to waiver.  *In re Qwest Commc'ns Intern., Inc.*, 450 F.3d 1179, 1195 (10th Cir. 2006).  While the origin of the privilege 100 years ago involved considering the attorney for one defendant to be an attorney for all codefendants, that is not how the privilege is interpreted anymore.  "That doctrine normally operates as a shield to preclude waiver of the attorney-client privilege when a disclosure of confidential information is made to a third party who shares a community of interest with the represented party." *Frontier Refin., Inc. v. Gorman-Rupp Co., Inc.*, 136 F.3d 695, 705 (10th Cir. 1998).

[51] Doc. 230 at 4.

[52] Compare Petitioner's case with the facts in *Mitchell v. United States*, No. 17-cv-2380-JAR-JPO, 2021 WL 150990 *5 (D. Kan. January 18, 2021).  In that case, SAUSA Erin Tomasic directly requested two sets of Petitioner William Mitchell's phone calls from CCA.  There is no evidence that the USAO requested Petitioner's calls or those of his codefendants.

On this shaky foundation, Petitioner places another assumption: "the United States then obtained these recordings and listened to them."[53] Petitioner offers this assumption on "information and belief," and the only other support is the same as that offered to bolster the first assumption: evidence that the prosecutor in this case listened to recorded attorney-client conversations in other cases. None of the allusions to other cases demonstrate either that the USAO obtained the codefendant recordings identified here nor listened to them, and amount to conclusory assumptions rather than factual assertions.[54] Petitioner indicated that he would amend his § 2255 motion upon discovery of more certain evidence of the government's interception of recordings, but he has not amended it.[55] As a result, Petitioner has failed to allege sufficient facts to support his § 2255 motion, and relies instead on impermissible speculation.[56]

Under any approach, this Court must dismiss Petitioner's motion. Petitioner's motion is untimely and he failed to allege facts that rise above mere speculation to support his claims. The record and motion demonstrate that Petitioner is not entitled to any relief, such that no evidentiary hearing is warranted.

---

[53] Doc. 230 at 4.

[54] *See MacLloyd v. United States*, 684 F. App'x 555, 559 (6th Cir. 2017) (When presented with factual allegations, "a district court may only forego a hearing where 'the petitioners allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." (quoting *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)).

[55] Doc. 230 at 6 (Petitioner "plans to ask this Court for permission to conduct discovery in order to identify other potential communications obtained by the united States and, if discovered, amend this Motion.").

[56] *United States v. Maxton*, 796 F. App'x 542, 545 (10th Cir. 2019) ("Mere speculation, unsupported by facts, does not entitle [Petitioner] to § 2255 relief."). Because Petitioner's claims fail on this basis, the Court need not and does not address whether interception of the Miller calls would permit Petitioner to assert a Sixth Amendment violation under the joint defense privilege theory. At the very least, the Court would need more than speculation that the government intercepted any communications before it had to consider whether the communications were privileged under any theory, including the joint defense privilege.

C.	**Certificate of Appealability**

Rule 11 of the Rules Governing Section 2255 Proceedings states that the Court must issue or deny a certificate of appealability ["COA"] when it enters a final order adverse to the applicant. "A certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right."[57] If the district court denies a habeas petition on procedural grounds without reaching the merits of petitioner's underlying constitutional claim, "the prisoner must show both (1) 'that jurists of reason would find it debatable whether the district court was correct in its procedural ruling' and (2) 'that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right.'"[58] For the reasons explained above, the Court finds that Petitioner has not satisfied this standard and, therefore, denies a certificate of appealability as to its ruling on his § 2255 motion.

**IT IS THEREFORE ORDERED BY THE COURT** that Petitioner's Motion for Relief Under 28 U.S.C. § 2255 (Doc. 230) is **dismissed** and a Certificate of Appealability is **denied**.

**IT IS SO ORDERED.**

Dated: August 16, 2021

> S/ Julie A. Robinson
> JULIE A. ROBINSON
> CHIEF UNITED STATES DISTRICT JUDGE

---

[57] 28 U.S.C. § 2253(c)(2).

[58] *United States v. Park*, 727 F. App'x 526, 528 (10th Cir. 2018) (emphasis in original) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).